**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**


TAMMY J. TAYLOR,                                :

               Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
               Defendant.                :

Case No. 3:09-cv-229

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938);  *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.  *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if

not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on December 10, 2004, alleging disability from July 1, 2003, due to clinical depression and bi-polar disorder. *See* Tr. 72-74; 99. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 45-53. Administrative Law Judge Melvin A. Padilla held a hearing, (Tr. 382-414), following which he determined that Plaintiff is not disabled. (Tr. 20-38). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she has severe anxiety disorder with panic features, dysthymia, personality disorder, residuals of right ankle fracture and subsequent surgery, and a history of polysubstance abuse (alcohol, heroin, marijuana) in alleged remission of heroin and continuing use of alcohol and marijuana, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 24, ¶ 3, 29 ¶ 4). Judge Padilla then found that Plaintiff has the residual functional capacity to perform light work that is limited to low stress jobs that do not involve dealing with the public, are not fast-paced, have no strict production quotas, and do not involve inherently stressful or hazardous activities. (Tr. 31-32, ¶ 5). Judge Padilla then used sections 202.20 through 202.22 (before attaining age fifty) and 202.13 through 202.15 (since attaining age fifty)

of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 37, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 38, ¶ 11).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged exertional impairments. (Doc. 8). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged mental impairments.

Plaintiff was evaluated at Eastway Behavioral Healthcare on April 25, 2003, at which time she complained of anxiety with daily panic attacks, depressed mood with occasional suicidal thoughts, and mild agoraphobia. (Tr. 164-71). The counselor who evaluated Plaintiff noted that her affect was tired, her mood was dysphoric, and that her insight was fair. *Id.* Plaintiff's diagnoses were identified as panic disorder with mild agoraphobia, rule out bipolar II disorder, and a major depressive disorder and the counselor assigned Plaintiff a GAF of 51. *Id.* Plaintiff participated in the diagnostic assessment only and she did not return for scheduled therapy. (Tr. 163).

The record contains a copy of Plaintiff's treatment notes from Advanced Therapeutic Services dated July, 2003, through January 10, 2008. (Tr. 238-66; 316-29; 368-69). When Plaintiff was initially evaluated, it was noted that Plaintiff's affect was labile, her mood was depressed and fearful, she appeared unkempt, had only fair impulse control, her speech was rapid, and that she appeared to have ideas of reference and flight of ideas. *Id.* It was also noted that Plaintiff's judgment was impaired, her memory was good, and she had no suicidal or homicidal ideation. *Id.* Plaintiff's diagnoses were identified as bipolar disorder and

polysubstance dependence disorder. *Id.*

When he initially evaluated Plaintiff on July 24, 2003, Dr. Mahajan, a psychiatrist at Advanced Therapeutics, reported that Plaintiff described depression with irritability, tendency to isolate, decreased motivation, helplessness, insomnia, feeling anxious, and having "anxiety attacks" with shortness of breath, chest pain, and shaking. Dr. Mahajan also reported that Plaintiff was restless, anxious, and had mildly rapid, but not pressured speech. *Id.* Dr. Mahajan identified Plaintiff's diagnoses as panic disorder and depressive disorder, NOS, and assigned her a GAF of 55. *Id.* Dr. Mahajan reported that while Plaintiff described some bi-polar symptoms, he doubted that she had a bipolar disorder. *Id.* Dr. Mahajan prescribed Effexor and Xanax and advised her to continue with therapy. *Id.*

Dr. Mahajan continued to treat Plaintiff on a monthly basis through May, 2004. *Id.* He noted Plaintiff was anxious at times, but it was often described as mild and his other findings were normal. *Id.* Plaintiff reported to Dr. Mahajan that she was employed full-time and that she was better able to deal with stress when she was taking medication. *Id.*

In August, 2004, Plaintiff began seeing Dr. Patel at Advanced Therapeutics. *Id.* In April, 2005, Dr. Patel reported that Plaintiff's panic disorder was now accompanied by agoraphobia. *Id.* In December, 2004, Dr. Patel reported that Plaintiff was moderately to extremely limited in her mental functioning, was not comfortable being out of her home or around people, resulting in her not being able to hold a job, could not use public transportation because it put her too close to people, and that she could not remember work instructions because her focus was solely on how to avoid people. (Tr. 173-74). Dr. Patel opined that Plaintiff was unemployable and her mental limitations would last twelve months or more. *Id.* In

March, 2005, and January, 2006, Dr. Patel reported similar mental functional capacity assessments. (Tr. 280-81, 362-63).

On June 1, 2006, Dr. Patel reported that Plaintiff was extremely limited in her ability to maintain concentration, persistence, or pace and markedly limited in her ability to maintain social functioning. (Tr. 267-79). Dr. Patel also reported that Plaintiff found it necessary to avoid people, could not be anywhere on a regular basis, and was unable to tolerate the stress of a work setting, and that she would often be too depressed to go to work and if she did go to work, her production would be slow or she may have a panic attack rendering her unable to do anything. *Id.* Dr. Patel opined that essentially all of Plaintiff's limitations stemmed from her inability to be around others. *Id.*

On September 12, 2007, examining psychologist, Dr. Flexman, reported that Plaintiff graduated from high school, had been seeing a psychiatrist every two months for the past three years, attended counseling twice a month, went through drug treatment in 1989 and 2005, and that her posture was relaxed with a mild gait disturbance. (Tr. 289-95). Dr. Flexman also reported that Plaintiff appeared anxious, restless, and irritable, her affect was labile, negative, and expansive, and that her attention span and judgment were fair. *Id.* Dr. Flexman noted that Plaintiff's concentration was good, she was functioning in the average range of intelligence, her obsessive thinking concerning somatic or other psychological problems was out of proportion with reality, and that she did not display ideas of reference. *Id.* Dr. Flexman identified Plaintiff's diagnoses as dysthymia and personality disorder and he assigned Plaintiff a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff could understand, remember, and carry out short, simple instructions, make simple work-related decisions, sustain attention and

concentration, and interact appropriately with supervisors. *Id.* Dr. Flexman further opined that Plaintiff had moderate limitations in her abilities to interact with the public and coworkers and to respond appropriately to work pressures and changes in a normal work setting. *Id.*

On January 25, 2008, Plaintiff consulted with psychiatrist Dr. Veneris who noted that Plaintiff graduated from high school, was obviously depressed, was tense and anxious, and reported that she had problems functioning and sleeping. (Tr. 370-72). Dr. Veneris identified Plaintiff's diagnoses as major depression, recurrent and severe without psychotic symptoms and he assigned her a GAF of 50. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting the opinions of treating psychiatrist Dr. Patel. (Doc. 8). Specifically, Plaintiff's position is that Judge Padilla failed to provide good reason for rejecting Dr. Patel's opinions. *Id.*

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able
> to provide a detailed, longitudinal picture of [the claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective
> medical findings alone of from reports of individual examinations,
> such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating

8

source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rul 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

9

> The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases, particularly in situations
> where a claimant knows that his physician has deemed him
> disabled and therefore might be especially bewildered when told
> by an administrative bureaucracy that she is not, unless some
> reason for the agency's decision is supplied.  *Snell v. Apfel,* 177
> F.3d 128, 134 (2nd Cir. 1999).  The requirement also ensures that
> the ALJ applies the treating physician rule and permits meaningful
> review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544.  "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Patel's opinion that Plaintiff is unemployable, Judge Padilla determined that his opinion is inconsistent with his own treatment notes, inconsistent with other evidence with respect to Plaintiff's allegations, and inconsistent with other mental health evidence.  (Tr. 34).

Although Dr. Patel opined in December, 2004; March, 2005; and January, 2006, that Plaintiff is unemployable, and in June, 2006, that Plaintiff is markedly to extremely limited in her abilities to perform work-related activities, the reasons he gave in support of those opinions are not consistent with his treatment notes as well as with other evidence in the record.

First, a review of Dr. Patel's treatment notes reveals that, with the exception of occasionally noting that Plaintiff's mood was dysphoric or depressed or that she was anxious,

10

Dr. Patel documented that his mental examinations revealed normal findings. (Tr. 238-48; 316-29; 368-69). In addition, Dr. Patel's treatment notes reveal that he treated Plaintiff only about once a month,[2] a frequency that seems inconsistent with a claim of total disability due to a mental impairment. Nevertheless, in addition to the foregoing, the record reveals that although Dr. Patel opined on three occasions that Plaintiff is unemployable, on those same three occasions he assigned her a GAF of 55 which indicates, at worst, a moderate impairment in her abilities to function. Although a GAF standing alone may not be determinative of disability, it is of "considerable help" in determining disability. *See, Howard v. Commissioner of Social Security,* 276 F.3d 235, 241 (6th Cir. 2002).

In support of his opinions that Plaintiff is essentially disabled, Dr. Patel relied on Plaintiff's alleged inability to be outside her home, her inability to use public transportation, her inability to be around other people, and her inability to remember work instructions because her focus was solely on how to avoid people. However, those bases for Plaintiff's alleged total disability are not supported by the record. For example, while it was categorized as an unsuccessful work attempt, the record reveals that Plaintiff was employed during the period June, 2003, to July, 2004. *See,* Tr. 35; 289. Plaintiff reported to Dr. Flexman that she left that employment because "she didn't like the work" but that she "got along well on this job with co-workers, supervisors and the public". *Id.* In addition, Plaintiff reported to Dr. Flexman that although she didn't like to take busses, when she needed to go someplace, she would drive herself, get a rid, or take the bus. (Tr. 290). Further, Plaintiff reported that she gets along fair to

---

[2] While it may be true that Plaintiff saw a counselor more frequently, as Judge Padilla noted, there are no treatment notes from that counselor. Therefore, the frequency of any such counseling is simply unknown. *See,* Tr. 34.

well with others and socializes with family and friends, and babysits for her grandchildren.  *Id.*
Those self-reported activities are completely inconsistent with the reasons Dr. Patel gave to
support his opinions that Plaintiff is unemployable.

Dr. Patel's opinions are inconsistent with Dr. Flexman's conclusions.  For
example, Dr. Flexman opined that although Plaintiff would have moderate limitations in her
abilities to interact with the public and coworkers, she is capable of understanding, remembering,
and carrying out short, simple instructions, make simple work-related decisions, sustain attention
and concentration, and interact appropriately with supervisors.   Dr. Patel's opinions are also
inconsistent with the reviewing mental health experts' opinions.  (Tr. 196-212).

Finally, Dr. Patel's opinions are inconsistent with Dr. Veneris' determination that
Plaintiff is, at worst, moderately impaired which is reflected by his assigning Plaintiff a GAF of
50.

This Court concludes that Judge Padilla adequately articulated his reasons for not
giving controlling or even great weight to Dr. Patel's opinions.

The Court's duty on appeal is not to re-weigh the evidence, but to determine
whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540
F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the
existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury,
a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the
jury."  *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986),
*quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The
Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 2, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).